UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL W. INGRAM, | ) |
| Plaintiff, | ) ) ) No. 3 09 0169 |
| v. | ) (No. 3:09mc0004) ) Judge Echols |
| DARON HALL, SHERIFF OF DAVIDSON COUNTY, ET AL., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM

### I. INTRODUCTION AND BACKGROUND

The plaintiff, proceeding *pro se* and *in forma pauperis*, is a prisoner in the Criminal Justice Center (CJC) in Nashville. He brings this action under 42 U.S.C. § 1983 against the following defendants: 1) Daron Hall, Sheriff of Davidson County; 2) Austin Bodie, CJC Administrator; 3) Correct Care Solutions (CCS), contract health care provider at CJC; 4) Rob Malloy, Director of CCS operations; 5) Dr. Judd Bazzell, M.D., CCS physician at CJC; 6) Jeremy McCraw, Registered Nurse/CCS site director at CJC; 7) Michael Patton, Nurse employed by CCS at CJC; 8) Nashville General Hospital; 9) Meharry Medical College; 10) Dr. f/n/u Limbird, M.D., orthopaedic surgeon at the Nashville General Hospital. The plaintiff seeks injunctive and declaratory relief, as well as money damages, alleging that the defendants violated his rights under the Eighth Amendment.

The plaintiff was booked into CJC on December 7, 2007. (Docket Entry No. 1, p. 4). According to the plaintiff, he had a preexisting dislocated shoulder that had been scheduled for surgery prior to his arrest.[1] (Docket Entry No. 1, p. 4).

The plaintiff advised the medical staff at CJC about his shoulder, and was asked by members of the CCS medical staff, "How long are you going to be here?" (Docket Entry No. 1, p. 5).

---

[1] The complaint makes reference to exhibits and other attached documents. However, no such documents have been submitted to the district court.

According to the plaintiff, he was asked this same question by "all CCS personnel at one time or another." (Docket Entry No. 1, p. 5) The plaintiff maintains that this question shows that CCS has a policy to "delay treatment hoping they can provide only palliative care and avoid more extensive and expensive treatment." (Docket Entry No. 1, p. 5).

The plaintiff asserts that the CCS staff gave him a sling for his arm, but that jail officials routinely confiscated it during shakedowns. (Docket Entry No. 1, p. 5) After having to replace the plaintiff's sling numerous times, defendant Bazzell entered an order directing the jail staff to cease taking it from him. (Docket Entry No. 1, p. 5).

The plaintiff avers that he wore a sling for eight weeks at the order of defendant Bazzell. (Docket Entry No. 1, p. 6) The plaintiff asserts that defendant Bazzell "performed only perfunctory (sight only) exams of [his] shoulder and [did] not order x-rays" until May, 2008. (Docket Entry No. 1, p. 5) The plaintiff contends that defendant Bazzell "showed at least callous disregard, if not deliberate indifference, for [his] health needs." (Docket Entry No. 1, p. 6).

Defendant Limbird performed surgery on the plaintiff's shoulder at the Nashville General Hospital on July 30, 2008. (Docket Entry No. 1, pp. 7, 9). According to the plaintiff, he was released from the hospital back to CJC while still under the influence of the anaesthetic. (Docket Entry No. 1, p. 9) Although the plaintiff had numerous follow-up appointments with defendant Limbird, according to the plaintiff, defendant Limbird only conducted visual exams of the surgical site, and asked how he was feeling, but did not order x-rays, perform range of motion tests, or order physical therapy. (Docket Entry No. 1, pp. 7, 10). The plaintiff alleges that defendant Limbird left the decision about post-operative physical therapy to CJC officials. (Docket Entry No. 1, p. 7). According to the plaintiff, physical therapy was never ordered. (Docket Entry No. 1, p. 7).

The plaintiff asserts that he went to medical at CJC in mid-October, 2008, complaining of pains in his neck and shoulder, and swelling around the surgical site. (Docket Entry No. 1, p. 8). In a followup visit on October 20, 2008, Nurse Annie Blackburn, who is not a party to this action,

2

checked for range of motion and took measurements of the swelling. (Docket Entry No. 1, p. 8). The plaintiff claims that Nurse Blackburn told him that the "clavicle had popped loose and [w]as sticking up . . ." (Docket Entry No. 1, p. 8). According to the plaintiff, Nurse Blackburn also told him that she would advise defendant Bazzell of the situation. (Docket Entry No. 1, p. 8).

On October 22, 2008, the plaintiff had x-rays made of his shoulder. (Docket Entry No. 1, p. 8). The plaintiff claims that he was told that he would be called back to medical the following day, and the results of the x-rays discussed with him. (Docket Entry No. 1, p. 8)

The plaintiff asserts that he was called to medical on October 25, 2008, and advised by defendant Patterson that the results of the x-rays were not yet available. (Docket Entry No. 1, pp. 8-9). According to the plaintiff, defendant Patterson "prescribed what he described as 'chicken wing' exercises," and advised the plaintiff that he would be called to see "the doctor" on October 28, 2008. (Docket Entry No. 1, p. 9). The plaintiff claims that, despite defendant Patterson's "good intent," defendant Patterson was not qualified to prescribe the exercises, which only increased the pain in his shoulder. (Docket Entry No. 1, p. 9).

The plaintiff alleges that, as of December 1, 2008, he not been seen by defendant Bazzell, nor have the results of the October x-rays been discussed with him. (Docket Entry No. 1, pp. 8-9)

## II. ANALYSIS

To state a claim under § 1983, the plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991)

3

Under the Prison Litigation Reform Act (PLRA), the courts are required to dismiss a prisoner's complaint if it is determined to be frivolous, malicious, or if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b). A complaint is frivolous and warrants dismissal when the claims "lack[] an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Claims lack an arguable basis in law or fact if they contain factual allegations that are fantastic or delusional, or if they are based on legal theories that are indisputably meritless. *Id.* at 327-28; *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198-99 (6th Cir. 1990). Although the courts are required to construe *pro se* complaints liberally, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), under the PLRA, the "courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal," *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997).

To establish a violation of his constitutional rights resulting from a denial/delay of medical care, the plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). "Deliberate indifference" is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(*en banc*); *Westlake v. Lucas*, 537 F.2d 857, 860-61 n.5 (6th Cir. 1976); *see also Estelle*, 429 U.S. at 105-06.

An Eighth Amendment claim of denial/delay of medical care claim has both an objective and subjective component. The objective component requires that the plaintiff's medical needs were sufficiently serious. *See Rhodes v. Chapman*, 452 U.S. 337 (1981); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The subjective component requires that the defendants were deliberately indifferent to the plaintiff's serious medical needs. *See Wilson v. Seiter*, 501 U.S. 294 (1991); *Hunt*, 974 F.2d at 735.

4

Complaints of malpractice or allegations of negligence are insufficient to entitle a plaintiff to relief. *Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment does not constitute an Eighth Amendment violation. *Id.* at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Westlake*, 537 F.2d at 860 n. 5. Finally, to set forth a viable claim for the denial/delay of medical care, the plaintiff must argue that his health suffered as a result of the alleged denial/delay. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 401 (6th Cir. 1999).

## A. Defendants Hall, Bodie, Malloy, and McCraw

The plaintiff asserts the following against the above-named defendants: 1) Defendant Hall is "legally responsible for the overall operation" of the Sheriff's Department, "and each institution under its jurisdiction . . ." (Docket Entry No. 1, p. 2); 2) defendant Bodie is "responsible for the operation of the Criminal Justice Center" (Docket Entry No. 1, p. 2); 3) defendant Malloy is "responsible for assuring proper medical care for each inmate in custody" in CJC (Docket Entry No. 1, pp. 2, 4-6); and 4) defendant McCraw is "responsibl[e] to carry out and supervise the day to day medical care needs of each inmate at CJC" (Docket Entry No. 1, p. 3).

Apart from naming defendants Hall, Bodie, and McCraw as defendants, and opining about what he believes their management/supervisory responsibilities are, the plaintiff provides no factual allegations against any of these three defendants that link them to the alleged events that gave rise to this action, or otherwise. Because the plaintiff fails to allege and show how these three defendants violated his rights, he fails to satisfy the first half of the two-part test under *Parratt, supra* at p. 4. Consequently, the plaintiff has failed to establish a *prima facie* case under § 1983 against them.

In addition to also positing what he believes are defendant Malloy's management/supervisory responsibilities (Docket Entry No. 1, p. 2), the plaintiff does allege that defendant Malloy was

5

responsible for delaying his surgery (Docket Entry No. 1, pp. 4, 6). However, the complaint is devoid of any facts that support the plaintiff's naked allegation against defendant Malloy.

Although *pro se* complaints are held to less stringent standards than complaints prepared by an attorney, *see Boag*, 454 U.S. at 365, the courts are not willing to abrogate basic pleading essentials in *pro se* suits, *see Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990). More than bare assertions of legal conclusions or personal opinions are required to satisfy federal notice pleading requirements. *Id.* A complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). The less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpled facts to support conclusory claims, such as the plaintiff's claim against defendant McCraw. *Wells*, 891 F.2d at 594.

Notwithstanding the dearth of factual allegations against these four defendants, the gist of the complaint suggests that the plaintiff's legal theory is that they are liable to him under the doctrine of *respondeat superior*. Assuming that to be the case, the law is settled that actions brought against state actors cannot be maintained on a theory of *respondeat superior*, *see e.g., Monell v. Dept. of Social Serv's of The City of New York, et al.*, 436 U.S. 658, 659, 691-95 (1978); *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), unless the defendants were personally involved in the alleged violations of the plaintiff's constitutional rights, *see e.g., Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). For vicarious liability to attach here, the four above-named defendants must have "encouraged . . . directly participated . . . authorized, approved, or knowingly acquiesced . . ." in the violations alleged. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The foregoing also pertains to lawsuits that attempt to impute liability to supervisory personnel. *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996).

6

Given that none of the above-named defendants are alleged to have been involved directly in the plaintiff's medical care, the only way that they could be liable under the doctrine of *respondeat superior* would be if those in their charge acted pursuant to a policy or custom – attributable to the defendants – to deny/delay medical care to prisoners solely for reasons of cost. *See Collins v City of Harker Heights, Tex*, 503 U.S. 115, 122 (1992); *Stemler v City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). The plaintiff does not allege, nor can it be liberally construed from the complaint, that such was the case.[2]

Finally, the Court notes that the plaintiff is suing defendant Hall in his official capacity. A sheriff sued in his official capacity is deemed to be a suit against the county. *Marchese v Lucas*, 758 F.2d 181, 189 (6th Cir. 1985)(citing *Brandon v Holt*, 469 U.S. 464 (1985)). Since the plaintiff is, in essence, suing the County of Davidson by suing Sheriff Hall in his official capacity, the plaintiff must allege and show that the alleged violations of his constitutional rights stemmed from a county policy, regulation, decision, custom, or the tolerance of a custom of such violations. Otherwise, a § 1983 claim will not lie. *See City of Canton, Ohio v Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 690-91; *Doe*, 103 F.3d at 507-09. The plaintiff does not allege, nor can it be inferred from the complaint, that his rights were violated as a consequence of any such county policy, regulation, decision, or custom. Consequently, the County of Davidson has no liability under § 1983.

For the reasons explained above, the plaintiff's claims against defendants Hall, Bodie, Malloy, and McCraw lack an arguable basis in law or fact. Accordingly, they will be dismissed as frivolous.

---

[2] To the extent that the plaintiff asserts that defendants Hall and Bodie should have known of his medical situation because of grievances that he claims to have filed (Docket Entry No 1, p 12), where a state actor's role is limited to the denial of administrative grievances, or the failure to act with respect to such grievances, such state actors are not liable under § 1983 on the theory that their actions constituted an acquiescence with respect to the alleged unconstitutional conduct. *See Shehee*, 199 F.3d at 300. More particularly, a "combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983." *Miller v Bock*, No 02-1964, 2003 WestLaw 202173 at *2 (6th Cir. (Mich))(citing *Poe v Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), *cert denied* 488 U.S. 1007 (1989).

7

## B. Defendant CCS

The plaintiff asserts that defendant CCS was responsible for providing medical care for his shoulder, but that it was defendant CCS' policy at CJC "to delay treatment hoping . . . [to] avoid more extensive and expensive treatment." (Docket Entry No. 1, pp. 4-5) The plaintiff does not allege that defendant CCS itself, *i.e.*, the corporate entity, was directly involved in his treatment. On the contrary, where the plaintiff mentions defendant CCS in the body of the compliant, it is always in the context of what CCS employees at CJC allegedly did, or did not do.

It is apparent that the plaintiff's legal theory against defendant CCS arises under the doctrine of *respondeat superior*. For reasons previously explained, in the absence of any direct involvement on the part of CCS in the plaintiff's care, the plaintiff must allege and show that the CCS employees at CJC were acting pursuant to a CCS policy or custom that violated the plaintiff's constitutional rights. In other words, to establish that defendant CCS is liable under the doctrine of *respondeat superior*, the plaintiff must show that CCS employees at CJC were enforcing a CCS custom/policy of denying/delaying treatment for complicated medical conditions to avoid the expense of such treatment. The plaintiff claims to have proof of such a policy.

The plaintiff asserts first that, every time he sought medical care for his shoulder at CJC, CCS employees asked the following question: "How long are you going to be here?" (Docket Entry No. 1, p. 5) According to the plaintiff, this question is proof of the alleged policy. The plaintiff does not explain why this question is proof– he just says that it is.

There is nothing in the question itself that supports the plaintiff's claim that defendant CCS had a policy of denying/delaying complex medical care to avoid the expense of such care, nor has the plaintiff provided any factual allegations to that end. As previously established, *surpa* at pp. 6-7, the Court is not obliged to conjure up facts where none are pled. Without more, the question posed to the plaintiff by the CCS staff is just that – a question.

8

The plaintiff also claims that the following constitute proof of CCS's alleged policy of delaying medical attention: 1) the CCS staff first issued a sling for the plaintiff's arm on January 15, 2008; 2) CCS nurses "repeatedly" issued new slings to the plaintiff whenever his sling was seized during a shakedown; 3) defendant Bazzell issued an order directing the jailers not to seize the plaintiff slings; 4) x-rays were not made until May 8, 2008; and 5) defendant Bazzell ordered the plaintiff to wear a sling for 8 weeks, and then return for a follow-up. (Docket Entry No. 1, pp. 5-6) The plaintiff asserts that, "[w]hether by corporate policy expressly written or not, by CCS practice in this case, this became their effective policy toward [the plaintiff]." (Docket Entry No. 1, p. 5)

Although the plaintiff claims that the events/actions described above constitute "further proof of CCS corporate delaying tactics regarding postponement of care," he once again makes no effort to explain why, nor is the explanation intuitively obvious from the complaint. In fact, four of the five events/actions cited above appear to inure to the plaintiff's medical benefit. Moreover, the complaint is utterly devoid of any factual allegations from which it can be concluded that defendant CCS, *i.e.*, the corporate entity, even knew anything about the plaintiff's medical condition, much less that it established a specific "corporate policy" toward him.

Finally, the plaintiff makes no effort to establish that defendant CCS actually had a "custom" or "policy" — as those terms are defined in the footnote below[3] — of avoiding/attempting to avoid the costs of providing medical care to prisoners with serious/complex medical needs. The plaintiff's claim against defendant CCS is couched solely in terms of his own alleged experience; the plaintiff makes no reference to any other prisoners whose medical needs were similar in complexity/seriousness to his own. Decisions made by on-site medical staff regarding the care of

---

[3] The word "custom" is defined as a "habitual practice or a course of action that characteristically is repeated under like circumstances." *See Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir. 1990). The word "policy" means "a plan or course of action . . . to influence and determine decisions, actions, and other matters." *The American Heritage Dictionary* 959 (2d ed. 1982).

9

a single individual do not constitute a "custom" or "policy" that imputes liability to the corporate entity under the doctrine of *respondeat superior*.

For the reasons explained above, the plaintiff has failed to establish defendant CCS' liability under § 1983. Accordingly, the plaintiff's claim against defendant CCS will be dismissed for failure to state a claim on which relief may be granted.

### C. Defendant Bazzell

The plaintiff's claims against defendant Bazzell pertain to the period of time before the plaintiff's shoulder surgery, and the period of time after the surgery. With respect to the period of time before the surgery, the plaintiff asserts generally that defendant Bazzell was aware that the plaintiff needed to have surgery, but failed to "perform due diligence" with respect to providing the required care. (Docket Entry No. 1, pp. 5-6)

Although the plaintiff alleges that defendant Bazzell showed deliberate indifference to his medical circumstances, the complaint is devoid of any factual allegations that support such a claim. Taking the facts alleged against defendant Bazzell prior to surgery in the light most favorable to the plaintiff, those facts support – at most – an inference of negligence bordering on medical malpractice. The scant facts alleged simply do not reflect the requisite intent to establish deliberate indifference. As previously noted, *supra* at p. 5, neither negligence nor medical malpractice will support a claim under § 1983.

Next, it is clear from the complaint that defendant Bazzell provided at least "some" medical care prior to the plaintiff's surgery. It also is apparent from the facts alleged that defendant Bazzell played a role in having the plaintiff's surgery performed. As previously established, *supra* at p. 5, a constitutional claim will not lie where, as here, a prisoner-plaintiff has been provided medical care/treatment, but disagrees with the care/treatment provided.

Finally, in the context of the period prior to surgery, the complaint is silent with respect to any detrimental effect that a delay in having the surgery may have had on the plaintiff's physical

10

well being. Delays in providing medical care may give rise to a violation of a prisoner's rights under the Eighth Amendment only if the plaintiff complains that he suffered a detrimental effect to his health as a consequence of the alleged delay. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)(citing *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001)). The plaintiff makes no such allegation in the context of the delay, nor can such an inference of such be liberally construed from the complaint.[4] As previously established, *supra* at pp. 6-7, the Court is not required to conjure up facts where no facts are pled.

Turning to the period following surgery, the plaintiff asserts that he went to medical at CJC approximately two and one-half months after his surgery – on October 16, 2008 – for "pains in his neck and shoulder," and "swelling in the shoulder around the surgical site." (Docket Entry No. 1, p. 8). According to the plaintiff, he returned to medical on October 20, 2008, at which time he was examined by Nurse Blackburn who told him that the "clavicle had popped loose and [wa]s sticking up again . . ." (Docket Entry No. 1, p. 8) The plaintiff asserts that Nurse Blackburn also told him that she would advise defendant Bazzell of the situation. (Docket Entry No. 1, p. 8)

The plaintiff avers that he was called back to medical on October 22, 2008 for x-rays, and was advised that he would be told the results the next day. (Docket Entry No. 1, p. 8) The plaintiff was called back to the clinic on October 25, 2008 at which time defendant Patton informed him that the x-rays had not yet been processed. (Docket Entry No. 1, pp. 8-9). The plaintiff avers that defendant Patton also told him that defendant Bazzell would call him on October 28, 2008. The plaintiff maintains that, as of December 1, 2008, he had yet to be told the results of the x-rays, or to see defendant Bazzell. (Docket Entry No. 1, pp. 8-9)

Apart from alleging that he has yet to learn the results of the x-rays, or see defendant Bazzell, the plaintiff has provided no factual allegations from which it may be inferred that defendant Bazzell

---

[4] The plaintiff asserts that he suffered detrimental effects to his physical well being in the context of the failure to prescribe physical therapy (Docket Entry No. 1, pp. 7-8), but not in the context of the pre-op delay.

11

was deliberately indifferent to the plaintiff's medical circumstances following surgery. The plaintiff does not allege, nor can it be liberally construed from the complaint, that defendant Bazzell acted with the requisite state of mind to constitute deliberate indifference. Moreover, the plaintiff cannot attribute deliberate indifference to defendant Bazzell based on the alleged statements of others.[5]

For the reasons explained above, the plaintiff's claim against defendant Bazzell lacks an arguable basis in law or fact. Accordingly, it will be dismissed as frivolous.

### D. Defendant Patton

The plaintiff's claim against defendant Patton pertains to the "chicken wing" exercises that defendant Patton prescribed for the plaintiff's shoulder. (Docket Entry No. 1, pp. 8-9). According to the plaintiff, without "x-rays and . . . physical therapy training, despite [his] good intent, Mr. Patton was taking professional responsibility without proper training to do so." (Docket Entry No. 1, p. 9).

The plaintiff's description of defendant Patton as well intended, establishes that defendant Patton not deliberately indifferent to the plaintiff's medical condition. At most, the plaintiff's claim against defendant Patton is that defendant Patton's actions constituted medical malpractice. As previously established, *supra* at p. 5, medical malpractice will not give rise to liability under § 1983.

For the reasons explained above, the plaintiff's claim against defendant Patton lacks an arguable basis in law or fact. Therefore, it will be dismissed as frivolous.

---

[5] The court notes that the plaintiff does not allege that defendant Bazzell was responsible for the failure to provide physical therapy after surgery, nor can such an inference be drawn from the complaint.

12

### E. Defendants Nashville General Hospital and Meharry Medical College

The plaintiff names the Nashville General Hospital and the Meharry Medical College as defendants to this action.[6] However, he provides no factual allegations against either defendant.[7] In failing to provide any factual allegations, the plaintiff fails to satisfy the first half of the two-part test under *Parratt*, *supra* at p. 4, as to either of the above-named defendants.

Assuming for the sake of argument that the Nashville General Hospital was acting under the color of state law for the purposes of § 1983 because it provided medical care to a prisoner, the plaintiff has provided no factual allegations that would permit the Court to reach the same conclusion as to the Meharry Medical School. Consequently, the plaintiff also has failed to satisfy the second half of the two-part test under *Parratt* as to defendant Meharry Medical College.

For the reasons explained above, the plaintiff has failed to establish a *prima facie* showing under § 1983 as to either of the above-named defendants. Accordingly, these claims will be dismissed for failure to state a claim on which relief may be granted.

### F. Defendant Limbird

Defendant Limbird performed the surgery on the plaintiff's shoulder. The plaintiff alleges that, although defendant Limbird examined him several times after his surgery, defendant Limbird did not order x-rays, perform any range-of-motion tests, or order post-operative physical therapy. (Docket Entry No. 1, pp. 7, 10).

The complaint is utterly devoid of any factual allegations that would support the conclusion that defendant Limbird acted with requisite state of mind to establish that he was deliberately indifferent to the plaintiff's medical circumstances. Under the facts alleged, it is clear that the

---

[6] The plaintiff does not identify the Meharry Medical College as a defendant in the body of the complaint where he identifies the parties to this action. (Docket Entry No. 1, pp. 2-3). He does, however, list the Meharry Medical College as a defendant in the style of the case.

[7] In the body of the complaint where the plaintiff identifies the defendants, the plaintiff asserts only that the Nashville General Hospital is responsible for "issuing hospital privileges ." (Docket Entry No. 1, p. 3) The issuance of hospital privileges is not a matter that is cognizable under § 1983.

13

plaintiff's legal theory against defendant Limbird is that he is guilty of medical malpractice. As previously established, *supra* at p 5, medical malpractice does not give rise to liability under § 1983.

The plaintiff's claim against defendant Limbird lacks an arguable basis in law or fact. Accordingly, it will be dismissed as frivolous.

### III. CONCLUSION

As reasoned herein, the complaint will be dismissed for frivolity and for failure to state a claim on which relief may be granted

An appropriate order will be entered.

Robert L. Echols
United States District Judge

14